UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

OLINDO ENTERPRISES, INC., OLINDO'S
IMPORT FOODS, INC., OLINDO PROPERTIES,          05-CV-6246 INC.,
AND OLINDO DIFRANCESCO

                          Plaintiffs,          **DECISION
                                               and ORDER**

          v.

CITY OF ROCHESTER,

                          Defendant.

_____

## INTRODUCTION

    Olindo Enterprises, Inc. ("Olindo Enterprises"), Olindo's Import
Foods, Inc. ("Olindo's Import"), Olindo Properties, Inc. ("Olindo
Properties") and Olindo DiFrancesco ("Olindo") (collectively
"plaintiffs") brought this suit pursuant to CERCLA, New York State
Environmental Conservation Law, and New York State common law,
seeking reimbursement for the costs of remediating environmental
contamination (the "Contamination"), including hazardous heavy
metals, contained in a layer of ash and cinders at least three feet
thick from property they own and occupy, located at 1510 Lyell Avenue
in the City of Rochester ("the Site"). Plaintiffs contend that the
defendant, City of Rochester ("defendant" and/or the "City") arranged
for disposal of the ash and cinder at the Site prior to 1930.

    Defendant moves for summary judgment dismissing the complaint,
arguing that there is no evidence to support CERCLA liability and
plaintiffs are unable to establish a genuine dispute as to any

material question of fact. In addition, defendant contends that opinion testimony of plaintiff's expert, S. Bruce Kohrn ("Kohrn") must be precluded. The City argues that his opinion is inadmissible under the Federal Rules of Evidence since it is not based on scientific, technical or other specialized knowledge and does not assist the trier of fact in reaching a decision or determining a fact at issue. Plaintiffs object to the summary judgment motion and also bring a motion in limine, requesting that the Court exclude the opinion testimony and affidavits of the City's proposed witnesses Tim O'Connell ("O'Connell") and Mark Gregor ("Gregor"), alleging that their proposed testimony is essentially expert opinion based on speculation and insufficient facts, and therefore inadmissible as unreliable.

For the reasons set forth below, (1) defendant's request to preclude the testimony of plaintiffs' expert witness is denied; (2) defendant's motion for summary judgment dismissing the complaint is denied; (3) plaintiffs' motion in limine to exclude the opinion testimony of O'Connell is denied and (4) plaintiffs' motion to preclude the opinion testimony of Gregor is granted in part and denied in part.

## BACKGROUND

Plaintiffs are the current owners of a two-acre parcel of property located at 1510 Lyell Avenue, Rochester, New York ("the Site"). On August 3, 1982, Joseph Stern and Sons, Inc. sold the Site to Olindo. See Complaint ¶ 13. On February 25, 1999, Olindo sold the

Site to John Sexton & Company ("Sexton") and transferred the food business to Sexton. See id. at ¶ 15. On January 10, 2002, Sexton conveyed both the Site and the food business to Olindo Enterprises, which currently owns and operates them. See id. at ¶ 16. In 2000, Olindo, Olindo Import and Sexton entered into a Voluntary Cleanup Agreement (the "VCA") with the New York Department of Environmental Conservation ("DEC"). Pursuant to the authority of the DEC and ECL Article 27, Title 13 and CERCLA, Olindo, Olindo Import and Sexton agreed to investigate and remediate the Contamination found at the Site.

On or about May 6, 2004, plaintiff served a Notice of Claim upon the City pursuant to New York General Municipal Law §50-h. The City contends that at the 50-h hearing, Olindo testified that when remediation at the Site was proceeding, "old people" informed him that the City used to dump at the Site. See Matthew Brown Affidavit ("Brown Aff.), Ex. A, Olindo Tr. 19:4-25. Accordingly, defendant argues that Olindo's self-serving testimony does not even rise to the level of hearsay, but is only based on rumor at best. See Brown Aff. at ¶ 16. Further, the City claims that the testimony of Stuart Bobry ("Bobry") also does not provide support for plaintiffs claim. See id. at ¶ 17. According to the City, Bobry stated that he did not recall ever being told how ash got on the Site. See Brown Aff., Ex. B, Bobry Tr. 12:12-13:2. Thus, the defendant argues that plaintiffs have adduced no evidence that the City dumped anything at the Site.

Defendant has also provided the Affidavit of O'Connell[1] and the Affidavit of Gregor[2] to show that the City did not dispose of and has no record of dumping ash and/or cinder at the Site. Defendant contends however that the City has records of landfilling at the former Emerson Street Landfill between 1930 and 1972.[3] Further, there is no indication in any City records that the City disposed of any ash South of the Railroad, North of Lyell Avenue, or West of Mount Reed Boulevard. See Brown Aff., Ex. C, ¶ 5. Plaintiffs argue that while the City claims that the absence of records of disposal prior to 1930 proves something, it does not provide a favorable inference since the City had no reliable records of disposal, and the reports it did have only provided anecdotal information. See Alan J. Knauf Affidavit ("Knauf Aff."), ¶ 16.[4]

In addition, the City claims that the only City incinerator in operation prior to 1930 was the Fall Street Incinerator, which was actually a garbage reduction plant that "cooked" rather than burned

---

[1] According to defendant, beginning in the early 1980s, O'Connell was responsible for reviewing and microfilming over 100,000 documents, relating to everything the City did from 1876 to the present. Defendant states that this included any dumping of ash by the City and also included, in tandem with the County of Monroe, reviewing all City activity during that period to inventory potential brownfield/superfund sites within the City. See Brown Aff., Ex. C at ¶ 3.

[2] According to defendant, Gregor is the City's Manager of the Division of Environmental Quality. He also researched City records to determine whether the City disposed of ash at the Site. See Brown Aff., Ex. D at ¶ 4-5.

[3] The former Emerson Street Landfill was a 230 acre landfill, north of the New York Central railroad right-of-way, located about 1/4 of a mile from the Site. The Emerson Street Landfill is now a superfund site. See Brown Aff., Ex. C at ¶ 4.

[4] Plaintiffs claim that in its initial responses to plaintiffs' discovery requests for information on waste disposal, the City refused to produced anything. After plaintiffs insisted, the City supplemented its responses. However, the documents produced still did not include regular records of pre-1930 disposal, which plaintiffs argue therefore, must not exist. See Knauf Aff., ¶¶ 17, 18.

garbage. Moreover, the City contends that the Fall Street incinerator was located on the west bank of the Genesee River in downtown and it would be highly unlikely that ash would be transported from the Fall Street plant to the Site or if ash from Fall Street was transported that far, it is highly unlikely that it would not have been disposed at the Emerson Street landfill. See Brown Aff., Ex. C, ¶ 6, Ex. D, ¶ 6.

According to the City, there are other possible sources of the ash that was found at the Site. As an example, there was a Delco Plant and an Atkins operation, which could have generated ash or cinders from their boilers that could have been dumped at the Site. In addition, the City states that there were a number of private entities that could have disposed of ash or cinders at the Site including the large boilers operating at the University of Rochester, Rochester Gas and Electric, Bausch & Lomb, Kodak and Gleason Works. See id., Ex. C, ¶ 7, Ex. D, ¶ 7. Further, defendant states that private boilers would burn household trash for people during the relevant time frame, which could have been responsible for the ash at the Site. See id., Ex. C, ¶ 8, Ex. D, ¶ 8. There were also other non-City reduction plants where people took their household trash to be burned during this time and those reduction plants could have disposed of the ash found at the Site. See id., Ex. C, ¶ 9, Ex. D, ¶ 9.

Moreover, during the time period at issue, the City claims people burned their own household trash and private contractors

disposed of the trash, which could have generated the ash at the Site. See id., Ex. C, ¶ 10. During this period, land owners sought fill materials including ash from various sources for use to fill in and level low areas such as ravines and gullies. See id., Ex. C, ¶ 11. However, plaintiffs argue that both Stephen DeMeo ("DeMeo") and Kohrn opine that the ash found on the Site originated from household waste disposed no later than during the 1930s, since it contained historical domestic items like cork-top bottles. However, it did not resemble fly or bottom ash or slag from boilers, and it was beneath the layer of waste from the scrap operation that took place in the late 1920s.[5] See Knauf Aff., ¶ 7; Kohrn Aff. and DeMeo Aff. In addition, plaintiffs contend that Kohrn found that based on his historic research, the only known source of such large quantities of household ash at that time was the City of Rochester, which as of 1917 was disposing 228,000 tons of waste per year and was filling low areas in convenient locations for the horse-drawn wagons hauling ash from the Falls Street reduction plant.

## **DISCUSSION**

### I.  **Defendant's Request to Exclude Plaintiffs' Expert Opinion**

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which provides that:

> If scientific, technical, or other specialized
> knowledge will assist the trier of fact to understand

---

[5]According to plaintiffs, beginning in the late 1920s the Site was used as a scrap operation by the Bobry Family, who disposed of an additional layer of hazardous substances on top of the ash and cinder.

> the evidence or to determine a fact in issue, a
> witness qualified as an expert by knowledge, skill,
> experience, training or education, may testify thereto
> in the form of an opinion or otherwise, if (1) the
> testimony is based upon sufficient facts or data, (2)
> the testimony is the product of reliable principles
> and methods and (3) the witness has applied the
> principles and methods reliably to the facts of the
> case.

Fed.R.Evid. 702.

In Daubert v. Merrell Dox Pharm., Inc., the Supreme Court established the role of district courts as "gatekeepers," charged with the responsibility of ensuring that scientific expert testimony is both relevant and reliable. See 509 U.S. 579 (1993); see also Kuhmo Tire Co., Ltd. v. Carmichael, 526 U.S. 137 (1999) (applying Daubert gatekeeping role to evaluation of testimony by engineers concerning product manufacture or design).

"[T]he District Court must determine whether the proffered testimony has a sufficiently reliable foundation to permit it to be considered." See Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 265 (2d Cir.2002) (quoting Daubert, 509 U.S. at 597). The Supreme Court in Daubert listed several factors which district courts may consider in assessing the reliability of proposed expert testimony, including: (1) whether the expert's testimony is capable of being tested; (2) whether the theory proffered by the expert has been subjected to peer review; (3) the known or potential rate of error associated with the expert's underlying techniques; (4) whether standards or controls were used in testing; and (5) whether the technique and theory employed by the expert are generally accepted in

the relevant scientific community. See Daubert, 509 U.S. at 592-594. However, "the test of reliability is 'flexible,' and Daubert's list of specific factors neither necessarily nor exhaustively applies to all experts or in every case." See Kumho Tire, 526 U.S. at 141. The Court's objective is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." See id. at 151.

Defendant anticipates that Kohrn will testify that in his opinion, the cinder and/or ash found throughout the Site was most likely dumped on the Site by the City and/or its contractors. Specifically, Kohrn opines that hazardous substances in the ash and/or cinder mixture most likely originated from ashes and other waste that was collected and dumped by the City and/or its contractors. See Kohrn Aff., Ex A. As such, Kohrn concludes that the disposal of those hazardous substances at the Site most likely resulted in the release or threatened release of hazardous substances into the environment. See id. However, defendant contends that Kohrn's opinion should be excluded from consideration at trial because he: (1) relied on inadmissable hearsay to support his expert report; (2) failed to personally observe the ash that is the subject of this lawsuit and he did not personally observe the ash from the Fall Street incinerator; (3) relied on historical documents that state the City dumped in various places, yet do not state that the

City dumped anything at the Site; and (4) provides no proper data to support his opinion that the City ever dumped anything at the Site.

As such, defendant argues, Kohrn is not qualified to render an expert opinion and his opinions are unreliable and should be excluded from consideration at trial. Further, defendant contends that plaintiff's expert report is not a scientific report at all, as he has not scientifically analyzed anything, rather it is his opinion as to the determination of facts, which is not the proper function of an expert. In addition, defendant claims, Kohrn makes only findings of fact based upon inadmissable hearsay evidence that any layman could evaluate and none of which is admissible at trial nor sufficient to defeat a motion for summary judgment.

Defendant correctly points out that while "trained experts commonly extrapolate from existing data . . . nothing in either Daubert or the Federal Rules of Evidence require[s] a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." See General Electric Co. v. Joiner, 522 U.S. 136, 146 (1997). In fact, courts should exclude expert testimony that is "speculative or conjectural, or if it is based on assumptions that are so unreasonable and contradictory as to suggest bad faith. . . ." See Boucher v. Suzuki Motor Corp., 73 F.3d 18, 21 (2d Cir.1996). However, where an expert's underlying methodology is reliable, defects in the conclusion drawn should be explored on cross-

examination and go to the weight of the evidence, not its admissibility. <u>See</u> <u>McCullock v. H.B. Fuller Co.</u>, 61 F.3d 1038, 1043 (2d Cir.1995). Moreover, the Supreme Court has emphasized the "liberal thrust" of Rule 702, favoring the admissibility of expert testimony. <u>See</u> <u>Blanchard v. Eli Lilly & Co.</u>, 207 F. Supp.2d 308, 316 (D.Vt.2002) (<u>quoting</u>, <u>Daubert</u>, 509 U.S. at 588).

I find that Kohrn's professional experience and the methodology used in rendering his opinion satisfies the requirements of Federal Rule of Evidence 702, and that the City's criticisms of Kohrn's opinions are better addressed on cross-examination and the weight to be afforded his testimony left to the fact finder. It is noted that the City does not challenge Kohrn's qualifications as an expert in environmental forensics. Moreover, the City makes no allegation that Kohrn has misapplied an incorrect forensic methodology, or that the information he relies upon is not that typically relied upon by an expert in environmental forensics.

Defendant also contends that Kohrn's proposed testimony should be excluded because it will not assist a trier of fact to understand the evidence or determine a fact at issue. "In fulfilling [its] gatekeeping role, the trial court should look to the standards of Rule 401 in analyzing whether proffered expert testimony is relevant, i.e., whether it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" <u>See</u> <u>Campbell v. Metro. Property and Cas. Ins. Co.</u>, 239 F.3d 179, 184

(2d Cir.2001) (quoting Federal Rule of Evidence 401). Whether or not the City disposed of ash and/or cinder at the Site is one of the key elements in determining liability in this case. Plaintiffs expect that Kohrn will testify that hazardous substances in the cinder/ash matrix most likely originated from ashes and other waste that was collected and dumped by the City at the Site. Plaintiffs allege that the City arranged for disposal of the ash and/or cinder at the Site prior to 1930, therefore, Kohrn's testimony and his expertise in environmental forensics is relevant to the issues in this action, and he should be allowed to testify to assist the jury in interpreting the facts upon which his opinion is based and in rendering a decision in this action.

In addition, Kohrn apparently intends to rely upon numerous sources of information in reaching his professional opinion, including: (1) laboratory data and DeMeo's account (environmental geologist); (2) interviews of Olindo and Bobry; (3) publications and opinions of Edward Yurkstas from the Monroe County Department of Health; (4) interview of plumber Jim Ianancone; and (5) other records and historical information produced concerning the Site. As such, there exists a sufficiently reliable basis for Kohrn to offer his expert opinion. Contrary to the City's arguments, experts need not rely upon published studies or perform independent testing. See B.F. Goodrich v. Betkoski, 99 F.3d 505, 524 (2d Cir. 1996) (Experts do not need to conduct their own tests); Gussack Realty Co. v. Xerox Corp., 224 F.3d 85, 94 (2d Cir. 2000) (Federal Rules of Evidence provide

that an expert may rely on facts or data made known to the expert at or before the hearing); <u>see</u> <u>also</u> <u>Amorgianos</u>, 303 F.3d at 266 ("Where an expert otherwise reliably utilizes scientific methods to reach a conclusion, lack of textual support may 'go to the weight, not the admissibility' of the expert's testimony"). Defendant may, upon cross-examination, contest Kohrn's conclusions. However, the ultimate value of Kohrn's testimony will be left to the determination of the fact finder.

## II.  **<u>Defendant's Motion for Summary Judgment</u>**

Rule 56 of the Federal Rules of Civil Procedure provides that a party is entitled to summary judgment as a matter of law only where, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . . ." <u>See</u> Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the burden of demonstrating that no genuine issue of material fact exists, and in making the decision the court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. <u>See</u> <u>Ford v. Reynolds</u>, 316 F.3d 351, 354 (2d Cir.2003) (<u>citing</u> <u>Marvel Characters v. Simon</u>, 310 F.3d 280, 285-86 (2d Cir.2002)). "Summary judgment is improper if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." <u>See</u> <u>id.</u>

Under CERCLA liability, a plaintiff must demonstrate that: (1) defendant's waste was disposed of at the Site and (2) hazardous

substances similar to those found in the defendant's waste were present at the Site at the time of release. See Dana Corp v. Am. Standard, Inc., 866 F.Supp. 1481, 1493 (N.D.Ind. 1994); see also City of New York v. Exxon Corp., 766 F.Supp. 177, 191 (S.D.N.Y. 1991). Defendant argues that plaintiffs have no evidence that the City dumped contaminated hazardous waste at the Site, except for plaintiffs' expert opinion, which basically concludes that the City could or might have disposed of ash and/or cinder at the Site. In essence defendant contends that without Kohrn's testimony, plaintiffs will be unable to prove the allegations contained in their complaint, and therefore the complaint should be dismissed.  However, since the Court has determined that plaintiffs may offer Kohrn's testimony, genuine issues of material fact exist and summary judgment is inappropriate at this time. Accordingly, defendant's motion for summary judgment is denied.

### III. **Plaintiffs' Motion to Preclude**

Plaintiffs move in limine to preclude the opinion testimonies of the City's fact witnesses, O'Connell and Gregor, who both provided affidavits regarding possible explanations for the deposit of a three-foot layer of ash and/or cinder at the Site. Plaintiffs claim that O'Connell and Gregor were not listed by defendant as Rule 26(a)(2) expert witnesses, nor were they identified as individuals who would be called to provide expert testimony pursuant to Rule 702 of the Federal Rules of Evidence. Plaintiffs claim that O'Connell's affidavit is inappropriate because it contains his opinions and

inferences concerning the meaning of the documents he reviewed. Moreover, plaintiffs claim that Gregor's affidavit is even more inappropriate since he claims to have "researched the issue of whether the City ... disposed of and/or landfilled ash and/or cinders [at the Site]." See Pls. Br. at 6-7. Plaintiffs object because such testimony is essentially expert testimony, and thus it would be improper for both O'Connell and Gregor, lay witnesses, to provide their opinions, including an evaluation of the historical records and theories of other possible sources of the ash and/or cinder at the Site. See id. at 2.

The Court finds that defendant has offered the affidavit and testimony of O'Connell as factual assertions to which he has knowledge and does not offer the same as expert opinion. Accordingly, plaintiffs' motion in limine as to O'Connell is denied. Gregor, as the Manager of the Division of Environment Quality for the City of Rochester, may testify with respect to his knowledge concerning documents from the Department of Environment Quality's database and what those records reveal. However, he cannot offer his opinion and interpretation as to the meaning of those records. His opinions and inferences regarding the conclusions to be reached from the documents he reviewed are inappropriate and improper opinion testimony. Accordingly, the Court limits Gregor's testimony and finds that he can properly testify solely as a foundation witness to support the admissibility of records that are in evidence. However, he may not offer an opinion as to the meaning of the records in evidence. Thus,

plaintiffs' motion to preclude Gregor's testimony is granted in part and denied in part.

## CONCLUSION

For the reasons set forth above, I find that the proposed testimony of plaintiffs' expert witness, S. Bruce Kohrn, is admissible under Federal Rule of Evidence 702. I also find that plaintiffs have presented sufficient questions of material fact to survive defendant's motion for summary judgment. Accordingly, (1) defendant's motion to exclude the expert testimony of Kohrn is denied; (2) defendant's motion for summary judgment dismissing the complaint is denied; (3) plaintiffs' motion in limine to exclude the opinion testimony of O'Connell is denied and (4) plaintiffs' motion to preclude the opinion testimony of Gregor is granted in part and denied in part.

**ALL OF THE ABOVE IS SO ORDERED.**

s/Michael A. Telesca
MICHAEL A. TELESCA
United States District Judge

Dated:    Rochester, New York
          March 7, 2008